IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TIMOTHY BROWN,<br>RONNIE SUVEG,<br>JOSEPH BOBERTZ,<br>CLIFFORD POTTERS,<br>STACEY RICHARDS,<br>WARREN WASHBURN,<br>NANCY YOUNGERMANN, and<br>JOHN BRAXTON, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED PARCEL SERVICE OF AMERICA, INC.;<br>THE ADMINISTRATIVE COMMITTEE of the UPS RETIREMENT PLAN; and<br>THE BOARD OF TRUSTEES of the UPS PENSION PLAN,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:20-cv-460-TCB |

**O R D E R**

This case comes before the Court on the motion [37] to dismiss for failure to state a claim by Defendants United Parcel Service of America, Inc., the Administrative Committee of the UPS retirement plan, and the Board of Trustees of the UPS pension plan.[1]

## I.   Background

On January 31, 2020, Plaintiffs Timothy Brown, Ronnie Suveg, and Joseph Bobertz filed this class action on behalf of themselves and all others similarly situated, alleging that Defendants failed to pay beneficiaries receiving a joint and survivor annuity ("JSA") the actuarially equivalent amount to a single life annuity ("SLA"), as required by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

Retirement benefits in the form of an SLA are distributed through a monthly payment for the remainder of a plan participant's lifetime.

---

[1] The retirement plan is administered by the Administrative Committee and the pension plan is administered by the Board of Trustees. This order will refer to these entities collectively as "Defendants," though the parties intermittently refer to same as the "Committees."

Alternatively, retirement benefits may be distributed through a JSA, which provides an annuity during the plan participant's life and then a percentage of that amount to the participant's beneficiary after the participant's death. ERISA requires that JSAs and SLAs be actuarially equivalent, meaning that the present value of a JSA equal that of an SLA.

To calculate the present value of a JSA, actuarial assumptions are applied based on the pertinent interest rate in conjunction with a mortality table. Together, the mortality table (which predicts how long the participant and the beneficiary will live) and interest rate determine how much to discount the expected payments so that the ultimate value of the benefit is equal to the present value of an SLA.

Plaintiffs[2] contend that Defendants are using outdated mortality tables. They argue that as a result of this reliance on outdated metrics, the present value of a JSA—and therefore the monthly payment that retirees continue to receive—is lower than what it should be under

---

[2] The original plaintiffs, Brown, Suveg, and Bobertz, have since been joined by additional named Plaintiffs Clifford Potters, Stacey Richards, Warren Washburn, Nancy Youngermann, and John Braxton (collectively, "Plaintiffs").

modern actuarial assumptions. Accordingly, they contend that they have "unknowingly forfeit[ed] part of their retirement benefits in violation of ERISA." [1] at 4.

On April 14, Defendants moved [37] to dismiss the complaint, contending that Plaintiffs' claims must be dismissed because Plaintiffs failed to exhaust their administrative remedies before seeking relief in this Court. That motion is now ripe for the Court's review.

## II.   Legal Standard

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting *id.*). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678 (citation omitted) (quoting *Twombly*, 550 U.S. at 556); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012).

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555–56 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III. Discussion

In the Eleventh Circuit, a plaintiff in an ERISA action must exhaust any available administrative remedies before filing suit. *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006); *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000).

The Eleventh Circuit "strictly enforce[s]" the exhaustion requirement, *Perrino*, 209 F.3d at 1315, in order to

> reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Mason v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985).

Nevertheless, a district court has discretion to excuse the exhaustion requirement "'when resort to administrative remedies would be futile or the remedy inadequate,' . . . or where a claimant is denied 'meaningful access' to the administrative review scheme in place." *Bickley*, 461 F.3d at 1328 (quoting *Perrino*, 209 F.3d at 1316 n.6). Such exceptions are usually applied in circumstances where requiring

exhaustion "would be an empty exercise in legal formalism." *Perrino*, 209 F.3d at 1318.

As a preliminary matter, Plaintiffs have failed to plead either exhaustion or an exception to the exhaustion requirement on the face of their complaint. Their claims are due to be dismissed on this basis alone. *See Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160–61 (11th Cir. 1992) (affirming dismissal where plaintiff "did not allege anything about whether she pursued any available relief under the claims procedures terms of [defendant's] employee benefits plan"); *see also Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*¸ 57 F.3d 1040, 1042 n.2 (11th Cir. 1995) (finding that exhaustion or excuse must be pled more effusively than simply "all conditions precedent were satisfied"); *Hoak v. Ledford*, No. 1:15-cv-3983-AT, 2016 WL 8948417, at *4 (N.D. Ga. Sept. 27, 2016) (finding that to survive dismissal, a plaintiff must "specify both the action they took to exhaust their administrative remedies, and the outcome of that action").

Nevertheless, for the sake of clarity and scrupulousness,[3] the Court will address Plaintiffs' arguments that (1) the exhaustion requirement does not apply to their claims; and (2) even if exhaustion were required, it is excused as futile under the circumstances.

### A. Applicability of the Administrative Review Procedure to Plaintiffs' Claims

Plaintiffs argue that their claims are not subject to the exhaustion requirement because they are challenging the legality of the plans themselves, not making a claim for benefits under the plans. They contend that the plans do not offer an administrative review process for challenges to their terms, instead providing such a process only for "[a]ll claims for benefits . . . ." [38-2] at 87; *see also* [38-3] at 59.[4]

However, courts in the Eleventh Circuit read the exhaustion requirement broadly and apply it "both to actions to enforce a statutory

---

[3] Plaintiffs argue that they did not include allegations related to exhaustion in the complaint because they "had no reason, based on the language of the Plans, to believe that there were any administrative remedies to exhaust in the first instance." [41] at 21.

[4] Neither party objects to the Court's consideration of the plan documents at issue, and the Court finds it appropriate to examine such documents at this stage because they are referenced at length in Plaintiffs' amended complaint.

right under ERISA and to actions brought to recover benefits under a plan." *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 109 (11th Cir. 1997) (citing *Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990)); *see also Mason*, 763 F.2d at 1225–27.

This is true even where the plan explicitly refers to claims for benefits, if the plan also grants its administrators broad authority to administer and govern the plans. *See Bickley*, 461 F.3d at 1328.

In *Bickley*, the Eleventh Circuit acknowledged that the plan at issue referred to "claims," which were defined as "demand[s] to the Benefits Claim Processor for the payment of benefits . . . ." *Id.* at 1329. However, the plan also represented that the defendant "ha[d] the exclusive responsibility and complete discretionary authority to control the operation and administration of the Plan, with all power necessary to resolve all interpretive, equitable and other questions that shall arise in the operation and administration of this Plan." *Id.*

Because the plan granted its administrators broad discretionary authority to remedy claims, the court found that the plaintiff had not

met his burden of showing that administrative review was clearly unavailable for statutory claims. Accordingly, the Eleventh Circuit concluded that "[a]llowing this case to go forward would result in premature judicial intervention in the decisionmaking process," and granted the motion to dismiss. *Id.* at 1330.

Similarly, in *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1224 (11th Cir. 2008), the Eleventh Circuit considered whether an administrative remedy was available where a provision regarding initial review of a claim referred only to "[c]laims for benefits." Citing *Bickley*, the Court concluded that the plan nevertheless provided an administrative remedy for a wide range of claims, including statutory claims, because a "grant of discretionary authority [to the defendants] was sufficient to establish the availability of an administrative remedy." *Id.*

Here, although the plans refer to claims for benefits, they also provide that Defendants have "the exclusive right to interpret the Plan and decide any matters arising in the administration and operation of the Plan, and any interpretations or decisions so made shall be

10

conclusive and binding on all persons." [38-2] at 85; [38-3] at 57. This language is nearly identical to that in *Bickley*.

Plaintiffs attempt to distinguish the plans here from the one in *Bickley* by arguing that administrators' power is limited here by the qualifier "[e]xcept as herein expressly provided." *See* [38-4] at 86. They argue that the qualifier is intended to indicate that there is a limitation on administrators' power to consideration of claims for benefits.

The Court disagrees. Plaintiffs bear a "heavy burden" of showing that administrators' power is limited in this fashion. *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1336 (N.D. Ala. 2004) (finding that "[t]he Eleventh Circuit's exhaustion rule could be characterized, practically speaking, as 'if in doubt, exhaustion is required'").

And although the plan language might not be as clear as that in *Lanfear*, 536 F.3d at 1224, which plainly stated that administrative review applied to "any grievance, complaint or claim . . . including but not limited to claims for benefits," it clearly contemplates that an administrator might "decide any matter arising in the administration and operation of the Plan." *See* [38-2] at 85. The fact that the plan

11

administrators' power is limited by a generalized qualifier does not, without more, demonstrate that they lack the power to remedy statutory claims such as Plaintiffs'. *See Mason*, 763 F.2d at 1226 (finding that exhaustion is required if there is any possibility that the administrator could grant the remedy sought).

Such a finding is especially appropriate where, as here, the Eleventh Circuit's policy rationales are met by requiring exhaustion.[5] Accordingly, Plaintiffs' claims are subject to the exhaustion requirement.

### B.     Futility of the Administrative Review Process

Plaintiffs contend that even if their claims are subject to exhaustion, it would have been futile for them to seek administrative review before filing suit.

---

[5] The Court notes in particular that intervention at this juncture would result in de novo review of the benefits decisions, thus depriving plan administrators of their ability as fiduciaries to review all of the bases for a litigant's claim, subject only to this Court's "arbitrary and capricious" or "abuse of discretion" review. *See Torres v. Pittston Co.*, 346 F.3d 1324, 1331 (11th Cir. 2003) (finding that when discretionary authority is given to a plan administrator, a district court reviews benefit decisions only under these deferential standards).

Plaintiffs make three arguments in support of this contention. First, they argue that Defendants do not have the ability to grant the requested relief because they can only interpret the plan language, not amend it. They contend that any re-interpretation of Plaintiffs' benefits would necessarily rely on the same outdated mortality tables and would therefore not provide any relief because the same calculations would result. *See* [41] at 23 (relying on *West v. AK Steel Corp.*, 484 F.3d 395, 404 (6th Cir. 2007) (finding that "resort to the administrative process would have been futile because the [defendant] would have simply recalculated the benefits under the method outlined in the [plan], resulting in the same benefit amount), and *Constantino v. TRW, Inc.*, 773 F. Supp. 34, 44 (N.D. Ohio 1991) ("The retirees . . . are not challenging [the defendant's] interpretation of the amendments, but the amendments themselves. It would be completely futile to require the retirees to exhaust this administrative remedy. [The defendant] would simply re-calculate their benefits . . . and reach the same result.")).

Second, Plaintiffs argue that the actuarial assumptions in the plans cannot be changed on an individual basis pursuant to ERISA and

that only UPS, rather than Defendants, can amend the plans to incorporate updated actuarial assumptions for the benefit of all plan participants. *See* [41] at 27 (relying in part on *Durand v. Hanover Ins. Grp., Inc.*, 560 F.3d 436, 439 (6th Cir. 2009) (concluding that exhaustion of the administrative process would be futile where the plaintiff was not contending that his benefits were improperly calculated under the plan's terms, but rather was making an "across-the-board challenge to the legality of [the] plan's methodology")).

Third, Plaintiffs urge the Court to find that exhaustion would be futile because Defendants issued a press release on February 6—after this suit was filed—claiming that its actuarial factors were "reasonable and compl[ied] with all applicable laws." *See* [41] at 28–29. Plaintiffs allege that it would have been futile for the new Plaintiffs who joined the suit after that date to engage in administrative review when UPS had already reaffirmed its reliance on its existing actuarial assumptions in the press release.

None of these contentions justifies granting relief from the exhaustion requirement.

14

As a preliminary matter and as previously noted, plaintiffs in the Eleventh Circuit must attempt to exhaust their administrative remedies in order to plead futility. *See Lanfear*, 536 F.3d at 1225 (noting that the court had previously "rejected an argument of futility as speculative because the participant had not attempted to pursue administrative remedies") (citing *Bickley*, 461 F.3d at 1330); *Coleman v. Alcatel-Lucent USA, Inc.*, No. 2:16-cv-108-SGC, 2017 WL 7038502, at *11 (N.D. Ala. Sept. 1, 2017) ("[A] plaintiff cannot simply plead futility without actually attempting to have his claim considered by the plan."); *La Ley Recovery Sys.-OB, Inc. v. UnitedHealthcare Ins. Co.*, No. 14-23451-civ-ALTONAGA/O'Sullivan, 2015 WL 12977396, at *7 (S.D. Fla. July 28, 2015) ("If a claimant never timely invokes the review process, a court can only speculate as to whether pursuing administrative remedies would have been futile, and courts have repeatedly declined to engage in such speculation.") (citing *Lanfear*, 536 F.3d at 1225).

By failing to engage in the administrative review process, Plaintiffs have waived their futility argument.

Moreover, even if Plaintiffs had not waived their argument, they have not made a "clear and positive showing" of futility such that suspension of the exhaustion requirement is appropriate. *Bickley*, 461 F.3d at 1330. Such a showing requires more than a plaintiff's "mere belief that there is a possibility that an administrative inquiry will be inadequate." *Moore v. Teledyne Techs. Inc. Pension Plan*, No. 14-463-KD-C, 2015 WL 1469949, at *5 (S.D. Ala. Mar. 31, 2015) (citing *Springer*, 908 F.2d at 901).

And although Plaintiffs argue that the administrative process could not provide plan-wide relief, the Eleventh Circuit has previously required exhaustion despite plaintiffs' claims seeking plan-wide relief. *See Lanfear*, 536 F.3d at 1223; *see also Byars v. Coca-Cola Co.*, No. 1:01-cv-3124-TWT, at *7 (N.D. Ga. Mar. 18, 2004) (rejecting the plaintiff's argument that "further administrative review would be futile based on the widespread nature of 'Defendants' practice in administering claims and benefits under the plan'"). This contention does not clearly and positively show that exhaustion is futile.

Moreover, despite Plaintiffs' argument that plan administrators can only interpret plan terms and not change them, the plans give administrators the "exclusive right" to "decide any matters arising in the administration and operation of the Plan." See [38-2] at 84. It is conceivable based on this language that administrators could provide a remedy beyond merely interpreting the plans to determine an individual's benefits.

To the extent Plaintiffs rely on non-binding decisions in other circuits to argue to the contrary, those cases are unpersuasive because the claims arose in circuits that, unlike the Eleventh, do not require exhaustion of statutory ERISA claims.[6]

To be sure, Plaintiffs also rely on a case out of this circuit in *Bacon v. Stiefel Laboratories, Inc.*, 677 F. Supp. 2d 1331, 1340 (S.D. Fla. 2010), to argue that administrators have limited authority such that exhaustion is futile. However, *Bacon* is distinguishable.

---

[6] Five circuits require exhaustion for statutory ERISA claims; six do not. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 n.6 (6th Cir. 1998) (collecting cases).

17

The court in *Bacon* found exhaustion futile because the defendants' allocation of discretionary power was expressly qualified "to the extent that such power [wa]s otherwise specifically allocated" and another section of the plan specifically allocated that power elsewhere. *Id.* at 1339. The court reasoned that it was clear that administrators could not grant the requested relief.

However, where a plan contains inconsistencies in its terms such that it is not clear whether an administrator lacks the authority to grant relief, exhaustion is not futile. *See In re U.S. Sugar Corp. Litig.*, 669 F. Supp. 2d 1301, 1316–17 (S.D. Fla. 2009).

Here, section 11.3 defines administrators' power as follows:

> Except as otherwise herein expressly provided, the Committee shall have the exclusive right to interpret the Plan and decide any matters arising in the administration and operation of the Plan.

*See* [38-2] at 86. Section 7.1 vests "[t]he right to amend this Plan in any respect . . . exclusively in the Board of Directors." *Id.* at 81.

In a vacuum, those passages can be read as conferring the power to grant Plaintiffs' desired remedy to the Board of Directors.

18

However, *Bickley* cautions courts to read plans as an integrated whole, and section 11.13, which is entitled "Allocation of Responsibility Among Fiduciaries for Plan and Trust Administration," qualifies the Board of Directors' power to amend. In that section, the Board of Directors are "in general" afforded the power to "amend or terminate, in whole or in part, this Plan or the Trust, *except as otherwise provided.*" *Id.* at 194 (emphasis added).

This language is considerably more attenuated than section 7.1. And when read in conjunction with administrators' "exclusive right" to "decide any matters arising in the administration and operation of the Plan," there is some inconsistency in the plan language to suggest that the plans' administrators might have the authority to grant Plaintiffs the administrative remedy they seek.

To be sure, the Court is not deciding at this juncture that plan administrators are capable of remedying Plaintiffs' claims through the administrative process. Instead, the operative question is whether

Plaintiffs have met their high burden of pleading—through a clear and positive showing—that exhaustion is futile. They have not.[7]

## IV. Conclusion

Because Plaintiffs fail to plead exhaustion or an excuse thereto in their complaint, Defendants' motion [37] to dismiss for failure to exhaust administrative remedies is granted. The Clerk is directed to close this case.

IT IS SO ORDERED this 27th day of August, 2020.

_____
Timothy C. Batten, Sr.
United States District Judge

---

[7] As a final matter, the Court notes that Plaintiffs' reliance on UPS's public statement does nothing to strengthen their argument that administrative review is futile. The Court is skeptical that UPS's statement that its actuarial assumptions "are reasonable and comply with all applicable laws" should be read as a rebuke to Plaintiffs sufficient to indicate that exhaustion would be futile. *Cf. Hoak*, 2017 WL 6033903, at *5 (finding that exhaustion would be futile because the defendant had "already expressly decided that [the plaintiff] [wa]s not eligible for spousal benefits under its interpretation of 'eligible spouse'"). That notwithstanding, the press release referenced is not appropriately considered at the motion-to-dismiss stage. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).